286 So.2d 112 (1973)
Gilbert C. MITCHELL and James B. O'Neil
v.
TRUCK SERVICE, INC. and William K. Christovich.
No. 5870.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
*113 Raymond D. Levith, New Orleans, for plaintiffs-appellants.
Monroe & Lemann, Stephen B. Lemann and Herman C. Hoffmann, Jr., New Orleans, for defendants-appellees.
Before REDMANN, LEMMON and SCHOTT, JJ.
SCHOTT, Judge.
Plaintiffs have appealed from a judgment maintaining an exception of no right and no cause of action filed in response to their petition for damages based upon allegations that defendants libeled plaintiffs.
The following are the pertinent allegations of plaintiffs' petition:

"II
In the legal cause entitled `Gilbert T. Mitchell v. Hepin-Stall Steel Company and Truck Service, Inc.,' No. 10-242 of the Docket of the 23rd Judicial District Court for the Parish of St. James your petitioner, Gilbert C. Mitchell, was the plaintiff in that action, wherein he was represented by your petitioner, James B. O'Neil, who is a member in good standing of the Bar of the State of Louisiana.

"III
In this same legal cause, Truck Service, Inc., was cast as a defendant, and was represented by William K. Christovich.

"IV
In his trial memorandum in the cause heretofore referenced, defendant, William K. Christovich, acting for and on behalf of Truck Service, Inc., did use descriptive language which defamed your petitioners herein in the following fashion:
A. As to your petitioner, Gilbert C. Mitchell:
1) `This suit is an after thought. It amounts to little more than a brazen attempt on the part of the claimant...'; and
2) `... (H)e now seeks through skilled counsel to manufacture a cause of action against defendant.....'
B. As to your petitioner, James B. O'Neil:
1) `This suit is an after thought. It amounts to little more than a brazen attempt on the part of the claimant...'; and
2) `... (H)e now seeks through skilled counsel to manufacture a cause of action against defendant ...'; and
3) `What the whole thing boils down to is counsel for plaintiff seeks to sell the idea to this court ... that there must be some connection .... despite the total absence of any proof establishing any such relationship.'

"V
In attempting to amicably compromist (sic) this matter, counsel for your petitioners wrote to all defendants herein, requesting an apology from defendant William K. Christovich, and requesting that defendant Truck Service, Inc. dissociate itself from these libelous and slanderous statements.

"VI
The corporate defendant herein did not deign to answer.

"VII
In his response, defendant William K. Christovich compounded the libel and the slander by accusing your petitioner James B. O'Neil herein as follows:
`You might be interested to learn that the "umbrage" taken by Mr. O'Neil was somewhat slow in arriving. Mr. *114 O'Neil telephoned this writer after receipt of the decision of the trial court in this matter and was quite affable until he learned that it was my recommendation to client that the case be appealed. It was then the Mr. O'Neil advised me that he was considering "taking action" in connection with what he considered to be objectionable remarks in the brief of Truck Service, Inc. He commented that if no appeal were in fact taken, he would very likely forget about the whole thing.'
"This statement was made by the defendant with the full knowledge that the matter which was the subject of the telephone call from Mr. O'Neil was on another aspect of the cause which bore and bearsno relationship to the language which is the subject of this petition.

"VIII
Such statements expose your petitioners to disrepute, and debase them in the opinion of their colleagues, the courts, and such members of the general public as may come upon these statements, by picturing them as men who are barratrous and champertous, and wholey (sic) and completely dishonest.

"IX
The accusations made against your petitioner, Gilbert C. Mitchell, in the said trial memorandum, constitutes an unwarranted malicious and libelous attack on his personal integrity and reputation.

"X
The accusations made against your petitioner, James B. O'Neil, in the said trial memorandum, and in the letter to petitioner's counsel, constitute an unwarranted, malicious, and libelour (sic) attack on his professional skill, and on his personal and professional integrity and reputation."
Defendants' peremptory exception was on the stated grounds that "said petition fails to state a right or cause of action against defendants ...." The exception of no right of action is defined in LSA-C.C.P. Art. 927 as "no interest in the plaintiff to institute the suit." Obviously, plaintiffs who claim to have suffered damages as a result of alleged libelous statements have an interest in the institution of their suit so that the exception of no right of action was improperly maintained by the trial court. However, the exception of no cause of action was properly maintained and to that extent the judgment appealed from will be affirmed.
For a disposition of this case we are guided by the dissertation on the law of libel contained in Madison v. Bolton, 234 La. 997, 102 So.2d 433:
"In a general and comprehensive sense, libel is the defamation of a person by the publication of any false and unprivileged writing which tends to expose him to contempt, hatred, ridicule or obloquy; or which causes him to be shunned or avoided; or which has a tendency to deprive him of the benefits of public confidence or injure him in his occupation; and includes almost any language which upon its face has a natural tendency to injure the person's reputation, either generally or with respect to his occupation.... A mere insinuation is as actionable as a positive assertion, if the meaning is plain; and if the words used, when taken in their ordinary acceptation, convey a degrading imputation, no matter how indirectly, they are libelousit matters not how artfully their meaning is concealed or disguised. Words charged to be libelous have been classified as those that are susceptible of a defamatory meaning and those that are indisputably defamatory on their face. In the latter category they are actionable per se; they impute to the person the commission of a crime or subject him to public ridicule, ignominy or disgrace, and are susceptible of but one meaning."
*115 Plaintiffs contend that the writings complained of are libelous per se, but a consideration of the writings complained of in the light of the foregoing does not lead us to such a conclusion. In the first place, the characterization of plaintiffs' suit by defendants in the trial memorandum as an "afterthought" or a "brazen attempt" may be strong language and may by some be considered discourteous but it does not of itself have any of the effects which it must in order to be classified as libelous per se, such as exposing plaintiffs to "contempt, hatred, ridicule or obloquy."
Furthermore, the statement to the effect that plaintiff Mitchell "seeks through skilled counsel [plaintiff O'Neil] to manufacture a cause of action against defendant" is not susceptible of the one meaning alone which plaintiffs have attributed to it; namely, that it pictures plaintiffs as "barratrous and champertous, and wholely (sic) and completely dishonest." A cause of action is a legal theory under which a plaintiff is entitled to obtain relief from a court based upon allegations of fact in a petition. In a sense every litigant manufactures his cause of action because he alleges in his petition certain facts on the basis of which he claims to be entitled to relief based upon legal consequences which he maintains flow from those facts. Certainly one meaning which can be attributed to the particular statement in question is that plaintiffs had nothing more than a frivolous claim not worthy of legal redress. This hardly constitutes a libelous attack on plaintiffs. Our adversary system frequently requires that strong positions be taken by litigants and their attorneys in the advancement of their causes. There is no end to cases in which one side claims that the other's witnesses are not telling the truth, that they weren't even present at times and under circumstances when they have sworn to have been so, that vehicles which are sworn to have been present are nothing more than phantom vehicles, that straw men are raised by opponents in argument, that facts sworn to never have occurred and that claims are frivolous or groundless or even figments of the other party's imagination. In contested cases, it is not at all unusual for the attorney for a litigant to argue in strong language to courts that such weaknesses exist in the opponent's case and such language is not defamation.
As to the next item which plaintiff O'Neil alleges was libelous, to wit, that plaintiff "seeks to sell the idea to the court.... despite the total absence of any proof," we do not find this language different from that which is found in many trial memoranda where an advocate attempts to belittle the legal position of his adversary or to downgrade or even degrade the proof which his adversary has offered in support of his position.
As to the pleaded excerpt from the letter of defendant Christovich plaintiffs contend that this language accuses them of blackmail, and while such may be one meaning which can be attributed to the pleaded words of the letter it is not the only possible meaning which they can have. Another meaning can be that defendant felt strongly about the weakness of plaintiffs' legal position in the first case, that defendants had not been guilty of including any libelous statements in their trial memorandum, that they were in no way intimidated by threats from plaintiffs that libel action might be initiated, and that they were therefore proceeding with their legal remedies in the first case regardless of any consequences which might flow in the form of further litigation.
A libel suit is a civil proceeding and if plaintiffs felt that they could bring a successful libel action against defendant, Truck Service, Inc., and its attorney, Christovich, they were at liberty to use this supposed cause of action as a basis for compromise just as they might use any other civil claim which might be pending or under consideration by the parties.
Having concluded that the words and phrases as pleaded are not libelous per se *116 we return to Madison v. Bolton where the Court held that even if words are not libelous per se they may be relatively libelous:
"Words not actionable per se fall short of those requirements [so as to make them libelous per se], and are found in numerous categories, among which are words that are actionable only in consequence of extrinsic facts, in which case the surrounding circumstances and conditions must be taken into account to determine the matter, or statements that contain language which unjustifiably tends to injure the reputation of a person, or reflect shame and disgrace upon him. The intent and meaning of an alleged defamatory statement must be gathered not only from the words singled out as libelous, but from the context as well, and the true meaning must be ascertained from a consideration of all parts of the statement as well as the circumstances of its publication. `The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average person among whom it is intended to circulate.'"
In the instant case we have before us only the bald allegations of the plaintiffs who did not see fit to make a part of their petition the entire trial memorandum from which the alleged defamatory statements were taken or even the entire letter containing the alleged libelous paragraph, and we could dispose of this case without reference to the documents as a whole. But in order to make a final disposition of this case we have examined in their entirety those documents which are a part of the record before us. The memorandum consists of 21 pages of the usual summary of evidence, legal citation and argument in behalf of the defendants in those prior proceedings. The words complained of appear in the first paragraph on the first page and the first and second paragraphs on the second page. When these words are read in the context of the memorandum they become even less offensive in that they are all a part of a strong memorandum attacking what defendants urged to be a losing cause filed by plaintiff, Gilbert C. Mitchell, in those proceedings.
The letter consists of two pages and five paragraphs and includes such comments as "the comments made by this writer during the course of trial memorandum on behalf of defendant, Truck Service, Inc., were made in a sincere sense of advocacy on behalf of our client." It ends with the statement "I trust that the foregoing explanation will be sufficient for your purpose." It recites to present counsel for plaintiffs the background of the contest between defendant Christovich and plaintiff O'Neil during the prior litigation, and in that context the inclusion of the information concerning the statement by O'Neil to the effect that he might compromise the entire matter by forgetting his claim for damages because of a so-called libel was certainly reasonable and proper.
Finally, the concluding principle above from Madison v. Bolton to the effect that the test as to whether a libel has been committed "is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate" is a most important consideration. See, also, Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App.2nd Cir. 1971) The persons among whom a trial memorandum is intended to circulate are the attorneys for the litigants, the trial judge, the court stenographers, and perhaps the court attaches such as law clerks. The statements complained of certainly do not cause plaintiffs to be exposed to contempt, hatred, ridicule or obloquy in the minds of such persons who read such extravagant language in hundreds of memoranda and pieces of correspondence which routinely pass through their hands. Similarly, when this test is applied to the letter complained of, we must conclude that it was not libelous.
Accordingly, the judgment appealed from is affirmed, but only insofar as it *117 sustained the peremptory exception of no cause of action and dismissed plaintiffs' petition. The costs of this appeal are taxed against plaintiffs.
Affirmed.